UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

CLARKSON S. FISHER COURTHOUSE
402 EAST STATE ST., ROOM 7000
TRENTON, NJ 08608
609-989-2009

**Not for Publication**

LETTER OPINION

October 30, 2013

**VIA CM/ECF**
All counsel of record

    Re:    Steven D. Catalano, *et al.* v. Township of Upper Freehold, *et al.*
            Civil Action No. 12-6393 (MAS) (TJB)

Dear Counsel:

This matter comes before the Court upon Defendants' Motions to Dismiss and/or for Summary Judgment.[1] (ECF Nos. 28-29.) Plaintiff Steven D. Catalano filed Opposition.[2] (ECF No. 31.) Defendants replied. (ECF Nos. 32-33.) The Court has carefully considered the submissions and has decided the motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, Defendants' motions are granted.

---

[1] Defendants include the Township of Upper Freehold, Ronald A. Gafgen, J. Stephen Walters, Granville M. Magee, Dianne Kelly, Lorisue H. Mount, Dr. Robert Frascella, Stephen J. Alexander, Richard Kelly and Bonnie L. Goldman, J.M.C.

[2] Plaintiffs include Steven D. Catalano, S.D. Walker, Inc., and S.D. Catalano, Inc. By way of correspondence dated November 7, 2012, Mr. Catalano indicated that the Court should disregard the corporate plaintiffs because they were not represented by counsel. Following the submission of Defendants' moving papers, Plaintiff retained John J. Ryan, Esq., who filed a notice of appearance on October 11, 2013. (ECF No. 35.) Having retained counsel, Mr. Catalano is free to revive the corporate plaintiffs' claims in an amended complaint, if he chooses to file one. For purposes of this motion, however, the Court will consider Catalano to be the sole Plaintiff.

# I. Background

## A. Factual History

The epicenter of this action is a 79-acre parcel of converted farmland (the "Property") at 720 Monmouth Road in New Jersey's Upper Freehold Township (the "Township"). The Property belongs to two corporations of which Plaintiff Steven D. Catalano ("Plaintiff" or "Catalano") is the sole shareholder.

Catalano, not an attorney, appears to have authored the Complaint. (ECF No. 1.) In it, Catalano accuses the Township of undertaking a campaign of harassment aimed at acquiring the Property. According to Catalano, the Township and several of its employees used local building codes as a pretext to upset his plan to construct a campground on the property. Catalano nevertheless succeeded in building the campground, but he claims the Township is now frustrating his efforts to operate it. The Complaint's factual pleadings are not a model of clarity.[3] Read liberally, however, it sets forth a rough narrative, which the Court summarizes here.

In 1996, Plaintiff persuaded the Township to pass a zoning ordinance that would allow him to develop a campground on the Property. In May 2002, Plaintiff obtained Township approval on his "Final Amended Site Plan," which called for the construction of a 222-site campground on the Property. (Compl. ¶ 11.)

In June 2002, Defendant Ronald Gafgen, a Township Code Official, issued a "Stop Construction Order" and "Notice of Violation [with] fines." (Compl. ¶ 12.) Catalano claims the violation related to an "exempt construction trailer" and "for sale sign" on the Property. (*Id.*) Despite the fact that construction of the campground had not yet commenced, Gafgen insisted Catalano post a $5,000 "engineering inspection fee" bond in escrow to "resolve" the violations. (*Id.*)

---

[3] Catalano, as noted above, initially appeared *pro se* in this action. This may account for the Complaint's opacity.

The violations were ultimately "revoked" pursuant to a settlement agreement whereby Catalano agreed to post the $5,000 bond.[4] (Compl. ¶ 13.)

Catalano alleges that the Township's Chief Financial Officer subsequently transferred $4,175.50 of the bond to a lawyer who worked for the Township's Planning Board. Catalano insists this transaction was unlawful because he had no "application" before the Planning Board at the time. (Compl. ¶ 14.) Catalano also claims that when he appeared at the Township's office to protest the transfer, a secretary "admit[ted] that it was a 'misappropriation of funds.'" (*Id.*)

According to Catalano, the Township responded to his protests with a series of retaliatory acts relating to the Property. These started in November 2006, when Gafgen began a "pattern" of "unannounced" inspections of the construction that was then underway on the Property. (Compl. ¶ 17.) As a result of the inspections, which ceased only when construction finished in November 2007, Gafgen issued various notices and violations to Plaintiff, including citations for "illegally subdividing land," refusing to permit "surprise" inspections, and violations of the "Uniform Construction Code Certificate of Occupancy" requirements. (Compl. ¶¶ 16-19.) Gafgen also wrote letters in which he "misstate[d] many facts in order to falsely accuse Plaintiff of non-compliance" with building codes. (Compl. ¶ 18.)

The Township allegedly stepped-up its harassment once construction of the campground finished. Catalano claims the Township's Tax Assessor now joined the fray, "over assess[ing]" Catalano's taxes and the taxes of individuals who had purchased campsites from Plaintiff. (Compl. ¶¶ 20, 22.)

Gafgen, meanwhile, continued to plague Catalano with citations for code violations. Plaintiff claims that Gafgen stalled on November 2007 applications for Certificates of Occupancy

---

[4] Catalano names the Municipal Court Judge who approved the settlement as a defendant in this action.

3

("CO") until February 2008, when Gafgen performed "surprise" inspections, found violations, and ordered Plaintiff to do more work. (Compl. ¶ 21.) After Plaintiff complained to the New Jersey Department of Community Affairs in April 2008, Gafgen "wrongly" cited Plaintiff for 18 additional violations. (Compl. ¶ 30.)

Gafgen supposedly changed his methods in 2010: instead of issuing building-related citations, which came under the jurisdiction of the "County Construction Code Board of Appeals," Gafgen began writing tickets "that [went] straight to Municipal Court." (Compl. ¶ 35.) Gafgen wrote Catalano two such tickets in 2010, both for alleged violations of a Township ordinance prohibiting campers from occupying the Property for more than 70 days per year. (Compl. ¶ 36.) The Municipal Court sustained the violations because, Catalano insists, the Township prosecutor persuaded the presiding judge to misapply evidentiary rules. (*Id.*) Catalano notes that the same judge later turned a blind eye to various acts of prosecutorial misconduct during proceedings on the "batch" of tickets Catalano received in 2011. (Compl. ¶ 38.)

Catalano claims the Township's most recent attack came in May 2012, when Gafgen wrote four additional tickets for violations of the ordinance limiting campground occupancy to 70 days. Proceedings related to these "false" charges are ongoing, but Catalano reports that the Municipal Court Judge denied his request for a public defender and ignored evidence that the Township's Prosecutor is influenced by conflicts of interest. (Compl. ¶¶ 40, 42.)

Catalano claims that a Township Attorney recently proposed that Catalano sell a portion of the Property to the Township. (Compl. ¶ 41.) As part of any purchase agreement, the Township would allegedly dismiss any pending charges against Plaintiff. (*Id.*)

### B. Causes of Action

Catalano's Complaint sets forth 29 causes of action. He invokes federal jurisdiction in Counts Three, Seven, Eight, Nine, Ten, Eleven, and Twelve, all of which charge the Township and

4

several of its employees with various civil rights violations. *See* 42 U.S.C. § 1983. Count Thirteen accuses Defendants of civil rights violations under New Jersey law. *See* N.J. Stat. Ann. § 10:6-2. Counts Four, Five, Six, and Fourteen through Twenty-Nine assert tort claims subject to the New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 *et seq*. Counts One and Two seek equitable relief in the form of an injunction and the appointment of a special master to "implement the Court's directives, to investigate the continuing status of Defendants' behavior and to report . . . to the Court." (Compl. ¶ 54.)

### C. Defendants' Motions

Defendants seek dismissal of the entire Complaint. Defendants assert that: (1) Plaintiff fails to plead a plausible claim for relief as required under Federal Rule of Civil Procedure 8 ("Rule 8"); (2) each substantive claim is untimely; (3) Plaintiff failed to provide the Township with the requisite notice of his tort claims under N.J. Stat. Ann. 59:8-8; (4) the Court should abstain from intervening in the Township's affairs; and (5) each Defendant is entitled to either absolute or qualified immunity from Plaintiff's claims. The Court addresses only Defendant's first and third argument.

## II. Analysis

In considering a Rule 12(b)(6) motion, the court accepts as true all of a plaintiff's well-pleaded factual allegations and construes the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court is free, however, to ignore legal conclusions or factually unsupported accusations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Having separated a complaint's well-pleaded facts from its conclusory allegations, the court considers whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not

5

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### A. The State Law Tort Claims Are Dismissed With Prejudice

The Complaint's non-federal causes of action, with the exception of Count Thirteen,[5] all allege torts. As such, these claims are subject to the NJTCA, which requires potential claimants to notify a public entity of tort claims against the entity or its employees "within 90 days of accrual of the claim." N.J. Stat. Ann. § 59:8-8. Where this requirement is unfulfilled, the claimant is "forever barred from recovering against [the] public entity or public employee." *Id.*

Defendants contend that Plaintiff failed to provide the Township with the requisite notification. Plaintiff does not deny this or make an attempt to show "good cause" for his failure. *See* N.J. Stat. Ann. § 59:8-9. Accordingly, Counts Four through Six and Fourteen through Twenty-Nine of the Complaint are dismissed with prejudice.

### B. The Civil Rights Claims Are Dismissed Without Prejudice

Eight of the Complaint's counts allege that the Township and certain Township employees violated Plaintiff's Fourth, Fifth and Fourteenth Amendment rights. These claims are poorly pled. For one thing, Plaintiff fails to set forth the conduct underlying each individual count. For example, Count Eight alleges that a Township employee's entry onto the Property for "an inspection" violated the Fourth Amendment, but does not say when the allegedly unlawful inspection occurred. (Compl. ¶¶ 94-100.) Without this information, the Court is unable to determine whether or not Plaintiff's civil rights claims are timely.

---

[5] Count Thirteen alleges a violation of the New Jersey Civil Rights Act ("NJCRA") and is, therefore, exempt from the NJTCA's notice requirement. *See Owens v. Feigin*, 947 A.2d 653, 654 (N.J. 2008).

Putting aside the issue of timeliness, the Court concludes that Plaintiff's civil rights claims fail to meet the plausibility requirement of Rule 8. *See Iqbal*, 556 U.S. at 678. Each of these claims hinges on the asserted illegality of Township employees' underlying conduct. In other words, the Complaint does not challenge the constitutionality of the Township's laws or claim that Township employees' efforts to enforce those laws ran afoul of the Constitution. Instead, Catalano claims that local codes and ordinances merely provided a pretext for Township officials to deprive Catalano of his rights in the Property. For instance, Catalano contends that Gafgen "falsely accuse[d]" him of violating building codes and occupancy, and he accuses the Tax Assessor of "wrongly over assess[ing]" his tax liability. (Compl. ¶¶ 18, 19, 22, 30-31.) These bare assertions of illegality amount to "legal conclusion[s] couched as factual [] allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Catalano applies conclusory labels like "false," "wrong," and "unlawful" to the acts of Gafgen and other Township officials, but he does not set forth factual allegations that, if proven, would justify the labels. In the absence of such allegations, the Complaint's civil rights claims are facially implausible.

Accordingly, the Court grants Defendants' motions and dismisses, without prejudice, Count Three and Counts Seven through Thirteen of the Complaint.[6]

---

[6] If there is an amended complaint, the Court is confident that Plaintiff's counsel will be mindful of the statute of limitations.

## III. Conclusion

For the reasons stated above, and other good cause shown, Defendants' motion is granted. Counts Four through Six and Fourteen through Twenty-Nine of the Complaint are dismissed with prejudice. Count Three and Counts Seven through Thirteen of the Complaint are dismissed without prejudice. Counts One and Two of the Complaint are moot in light of the substantive counts' dismissal. An appropriate order follows.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE